HEARD NOVEMBER TERM, 1873.

## STATE *vs.* WALKER.

*Mandamus* is the proper remedy to compel a Sheriff to keep his office at the County seat.

After the decision in *State* vs. *Chairman County Canvassers*, 4 S. C., 485, the papers relating to the election were transmitted to the State Board of Canvassers, but that Board declined to act upon them: *Held*, That the effect was to leave the declaration of the Board of County Canvassers final and conclusive; and that Barnwell was the County seat.

This was a petition by the Attorney General to the Supreme Court for a writ of *mandamus* to compel N. G. W. Walker, Sheriff of Barnwell County, to remove his office from Blackville to Barnwell.

The petition, after referring to the Act to refer to the qualified voters of Barnwell County the location of the County seat, and setting forth that the election was held, and that the County Board of Canvassers had certified that a majority of the votes were given for Barnwell as the County seat, proceeded to state, in effect, that after the decision of this Court in the case of the *State* vs. *The Chairman County Canvassers*, 4 S. C., 485, the poll lists and other papers relating to the election were transmitted to the State Board of Canvassers, who declined to act upon them on the ground that it was not their duty to do so under the Act, wherefore Barnwell became, and was and is, the County seat.

The Sheriff, by his answer, admitted the facts, and submitted the question to the Court.

*Aldrich*, for relator.

*Hunter*, contra.

April 30, 1874.   The opinion of the Court was delivered by

WILLARD, A. J.   If the town of Barnwell is by law the County seat of Barnwell County, it is the duty of the respondent, who is the Sheriff of that County, to keep his office at that place, and a writ of *mandamus* is the appropriate remedy for its enforcement.

This Court decided, in the case of *The State Ex Rel. Lartigue* vs. *Nerland*, 4 S. C., 485, that it was the duty of the County Canvassers of Barnwell County, under the Act of February 12th, 1873, 15 Stat., 333, to transmit to the Board of State Canvassers all protests and other papers relating to the election held under that Act.   It appears that such papers were so transmitted, but that the Board of State Canvassers have declined to pass upon the matters thus brought before them.

The grounds upon which their refusal to consider the matters thus submitted to them are not of importance to the present case.   It is enough to know that they have had an opportunity to reverse the conclusions arrived at by the Board of County Canvassers, and that they have not exercised their power to reverse or modify such conclusions and determination.   It is claimed by the relator that the effect of this want of action, on the part of the State Board of Canvassers, is to leave the determinations and declarations made by the Board of County Canvassers final and conclusive.   If this view is correct, Barnwell is the County seat, and the writ of *mandamus* should be allowed as prayed.   On the other hand, it is contended that the election has no finality or validity until its result is ascertained and declared by the Board of State Canvassers, and that such ascertainment and declaration not having been made, the election is inoperative and void, and Blackville remains the legal County seat.

The position thus assumed by the respondent involves the proposition that any election, the results of which are proper to be ascertained by the State Board of Canvassers, can be defeated by the mere refusal of that Board to perform its legal functions.   Such a conclusion is not to be hastily arrived at, as it tends to place in the hands of an official Board power to neutralize the elective power, and consequently to prevent succession to public office in accordance with the will of the majority of the electors.

The respondent places his proposition upon the language of the last clause of Section 2 of the Act already cited, which is as fol-

lows: " *Provided*, That in all respects the said election shall be held, conducted and determined as is now provided by law for the holding of elections for State and County officers." He concludes that inasmuch as this Court. has held that the election must, in due course, be considered and passed upon by the State Board of Canvassers, therefore it cannot be regarded as effectually determined for any purpose until so determined by the last named Board.

The fact that the election is not finally and conclusively determined until the Board of State Canvassers has had due opportunity to act upon it, is perfectly consistent with the idea that the determination by the County Board is to stand as final and conclusive, unless its force is impaired by the action of the State Board. Construing the law by its subject-matter, it must be borne in mind that the fact of an election, as an act of the electors expressing choice as to a matter submitted to them by the Constitution or laws, is the foundation of all rights springing out of such an election. The action of canvassers, whether local or general, is merely a mode of ascertaining the existence of such fact. Under our laws there are two bodies entrusted with power to ascertain and fix the fact of an election for State or County purposes, the one acting as a primary tribunal and the other as a revisory body. The Board of County Canvassers is the primary body, and the Board of State Canvassers is the revisory body. To say that the election fails unless a proper declaration is made by the Board of State Canvassers is to destroy entirely the function of the County Board. On the other hand, to allow the Board of County Canvassers power to make a determination and declaration, valid and conclusive, unless reversed or modified by the revisory body, is to give to each body a distinct, important and entirely consistent function in harmony with the methods by which we are accustomed to fix the existence of facts on which legal rights depend.

The certificates of the result of the election issued by the Board of County Canvassers were not issued in conflict with any provision of the law, and, being consistent with the legal state of facts, are sufficient to fulfil the intention of the Statute and to put in operation the rights placed by the Statute upon the results of the choice of the electors.

The order herein has already been filed.

*Wright*, A. J., concurred.

Moses, C. J. I am compelled to dissent from the judgment of the Court in these cases, and shall briefly state my reasons.

In the *State Ex Relatione E. C. Lartigue and M. C. Maloney* vs. *W. A. Nerland,* (April Term, 1873,) it was held that the election, under the Act of February 12, 1873, was not determined according to law, because the protest of the contestants had not been transmitted to and heard by the Board of State Canvassers. I did not concur in that conclusion, but as it was the judgment of the Court I regard myself bound by it. In my view, the judgment in the case now before us is in direct contradiction, not only of the grounds on which the result in that case rested, but of the judgment itself. There it was held that the election was not complete, because it had not been passed upon by the Board of State Canvassers in accordance with the general election law; here it is held that, notwithstanding its refusal to act upon the return of the Board of County Canvassers, the action of the last named Board is final and conclusive.

Looking to the views of the majority of the Court, as expressed in the opinion in *Lartigue & Maloney* vs. *Nerland,* it cannot be disputed that the order for the *mandamus* was granted because the election was considered without finality or validity until its result was declared by the Board of State Canvassers. It is of no consequence on what ground, whether of supposed want of jurisdiction or otherwise, the said Board declined to render its judgment, for if, according to the opinion of the Court in the case referred to, the action of the Board was necessary to a final determination of the election, until obtained the election was not determined.

It is (as I regard it) no sufficient answer, that an election is not to be defeated because of the refusal of the Board of State Canvassers to execute the duties enjoined upon it by the Legislature. If the action of that Board (as was certainly held in *Lartigue & Maloney* vs. *Nerland*) was necessary to the determination of the election, it could have been enforced by the very writ now claimed here, and it would have been the appropriate remedy, to compel, on the part of the Board, the performance of a duty which the opinion in the same case says was required of it by law.